UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | 3:06-CV-00464-BES-VPC |
| Plaintiff, | **AMENDED ORDER** |
| v. | |
| TAMI L. NEWMAN, individually and as Guardian of JAMES NEWMAN, a Minor; PAUL B. NEWMAN, individually and as Guardian of JAMES NEWMAN, a minor; JAMES NEWMAN, a minor; KELLY McKEON, individually and as Guardian of KENZIE McKEON, a minor; KENZIE McKEON, a minor; MARIA DEL SOCORRO PEREZ, individually and as Guardian of ALEX RUEDA, a minor; FRANCISCO PEREZ; ALEX RUEDA, a minor; and DOES I through X, inclusive, | |
| Defendants. | |

Presently before the Court is Plaintiff American Family Mutual Insurance Company's ("American Family") Motion for Summary Judgment (#25), filed on May 23, 2007. Defendants Tami L. Newman, Paul B. Newman, and James Newman (collectively referred to as "the Newmans") filed their Response to Motion for Summary Judgment (#26) on June 11, 2007. Defendants Alex Rueda, Kelly McKeon, Kenzie McKeon, Maria Del Socorro Perez, and Francisco Perez filed their Joinder to Response to Motion for Summary Judgment (#27) on June 11, 2007. On June 12, 2007, the Newmans filed their Cross Motion for Summary

Judgment (#28). And on June 13, 2007, Rueda, the McKeons, and the Perezes filed their Joinder to Cross Motion for Summary Judgment (#29). On June 25, 2007, American Family filed its Reply in Support of Motion for Summary Judgment (#30). On July 2, 2007, American Family filed its Opposition to Defendants' Cross-Motion for Summary Judgment (#32). The Newmans filed their Reply to Response to Cross Motion for Summary Judgment (#33) on July 13, 2007. The Court conducted a hearing on the motions on January 31, 2008.

## I. BACKGROUND

This case arises out of a shooting at Pine Middle School in Reno, Nevada. (Mot. Summ. J. (#25) 2-3); (Compl. (#1) ¶¶ 13-15.) On March 14, 2006, James Newman, who at that time was near the cafeteria, began firing a .38 caliber revolver at students. (Compl. (#1) ¶¶ 13-14.) Two students were injured, Alex Rueda and Kenzie McKeon. Id. On July 24, 2006, a complaint was filed in Nevada state court against Newman and his parents, Paul and Tami, alleging a negligence cause of action against James, as well as negligence and negligent entrustment causes of action against Paul and Tami. (Mot. Summ. J. (#25) at Ex. E ¶¶ 13-14.) At the time of the shooting, the Newmans held a homeowners insurance policy and an umbrella liability policy ("the policies") through American Family. (Mot. Summ. J. (#25) Ex. C, D.)

On August 23, 2006, American Family filed the instant action seeking declaratory relief. (Compl. (#1) ¶¶ 24-32.) More specifically, American Mutual seeks a declaration that the policies it provided to the Newmans do not cover any liability arising out of the March 14, 2006, shooting and therefore it is not obligated to defend or indemnify the Newmans. Id. On May 23, 2007, American Family filed its summary judgment motion to that effect. (Mot. Summ. J. (#25) 17.) And on June 12, 2007, the Newmans–joined by Rueda, the McKeons, and the Perezes–filed their cross motion for summary judgment, claiming that there is a possibility of coverage as to the causes of action alleged against both James and his parents and thus this Court should declare that American Family has a duty to defend them in the underlying state court action. (Cross Mot. Summ. J. (#28) 17.)

## II. LEGAL STANDARD

**A. Applicable Law**

When sitting in diversity, a federal district court must apply the substantive law of the forum state in which it resides. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Fortis Benefits Ins. Co. v. Johnson, 966 F. Supp. 987, 989 (D. Nev. 1997). As such, this Court must construe the policies in question as a Nevada state court would if presented with similar questions. Allstate Ins. Co. v. Sanders, 495 F. Supp. 2d 1104, 1106 (D. Nev. 2007) (citing Fortis, 966 F. Supp. at 990-91).

"An insurance company's duty to defend and/or indemnify its insured arises from the provisions of the insurance policy." Id. (citing Rockwood Ins. Co. v. Federated Capital Corp., 694 F. Supp. 772, 776 (D. Nev. 1988)). "The insurer must defend any lawsuit brought against its insured which potentially seeks damages within the coverage of the policy." Rockwood, 694 F. Supp. at 776. Where "facts are alleged which, if proven, would give rise to the duty to indemnify, then the insurer must defend. . . . The potentiality of covered liability is the test." Id. "[A]n insurer wishing to restrict the coverage of a policy should employ language which clearly and distinctly communicates to the insured the nature of the limitation." Sanders, 495 F. Supp. 2d at 1106 (citing Nat'l Union Fire Ins. Co. v. Reno's Executive Air, 100 Nev. 360, 364, 682 P. 2d 1380, 1382 (1984)).

**B. Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the

///

1 litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

If the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, then the respondent must show by specific facts the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." Blue Ridge Insurance Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Where, as here, the parties file cross-motions for summary judgment, the court must consider each party's motion separately and determine whether that party is entitled to a judgment under Rule 56. In making these determinations, the court must evaluate the evidence offered in support of each cross-motion. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136-37 (9th Cir. 2001).

### III. DISCUSSION

**A. Negligence Claim Against James Newman**

    **1. Accident or Occurrence**

The Newmans' policies cover bodily injury that results from an "occurrence." (Mot. Summ. J. #25) at Ex. C, D.) "Occurrence" is defined by the policies to mean an "accident." Id. According to American Family, the March 14, 2006, shooting was not an accident or occurrence within the meaning of the policies. (Mot. Summ. J. (#25) 11.) The Newmans posit, though, that there is a possibility that the injuries sustained by Rueda were the result of an accident. (Cross Mot. Summ. J. (#28) 10-11.) In support of this claim, the Newmans point to James Newman's deposition testimony in which he stated that he thought his first pull of the trigger was accidental. Id. at 7-11.

The Nevada Supreme Court has defined that the term "accident" as meaning a "happening that is not expected, foreseen or intended." Beckwith v. State Farm Fire & Cas. Co., 120 Nev. 23, 26, 83 P.2d 274, 277 (Nev. 2004) (citation omitted); see also Catania v. State Farm Life Ins. Co., Inc., 95 Nev. 532, 533-34, 598 P.2d 631, 632-33 (Nev. 1979) (holding that "[o]ne paying the premium for a policy which insures against 'death by accidental means' intends to . . . insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgement."). Under Nevada law, the focus in determining whether an "accident" has occurred is on the "insured's intentions and/or expectations with respect to the resulting *harm*." Sanders, 495 F. Supp. 2d at 1108 (citing Catania, 598 P.2d at 633) (emphasis added).

In this case, the Court cannot conclude that as a matter of law that the harm that visited itself on Rueda was not an occurrence. As the Newmans point out, there is a question as to whether James Newman intentionally pulled the trigger the first time, as well as to whether the gun fired the first time striking Rueda. In his deposition, James Newman testified as follows:

> A. So like everyone was heading to the lockers, and I just went into the bathroom, and into a stall, and just took out the gun, and loaded the bullets, and walked out. And I didn't see anyone at first, and then I just saw Alex.
>
> Q. Okay. And what – what did you do?

>A. Well, my friend was by the lockers.
>
>Q. Okay.
>
>A. And my attention was, like to my friend.  I just – I told him to run, you know/And like he – like my fingers, like, pulled the trigger, you know, accidentally, because I wasn't even paying attention, and then I like pulled the other two. (Cross Mot. Summ. J. (#28) at Ex. 4, 29:1-13.)
>
>. . .
>
>Q. Okay, and then what did you do?
>
>A. I like I can said, you know, like – just pulled the trigger.
>
>Q. Okay.
>
>A. You know, and the – I didn't even know I pulled the trigger, and then my head and it just fired.
>
>Q. Okay.  Was the gun aiming at Alex when you pulled the trigger the first time?
>
>A. In his direction.
>
>Q. Okay.  And did the gun - did a bullet go off the first time you pulled the trigger?
>
>A. I don't know, because – just kept pulling it.  Id. at Ex. 4, 36:11-23.
>
>. . .
>
>Q. Okay.  Do you think the gun went off by accident?
>
>A. I think the first part, and then I pulled the others.  Id. at Ex. 4, 62:1-7.
>
>. . .
>
>Q. Let me ask it this way.  Is it fair to say you brought the gun to school to shoot it?
>
>A. I don't know.  Id. at Ex. 4, 58:19-21.

While James Newman's testimony is somewhat vague and equivocal, the fact remains that he states plainly that his first pull of the trigger was accidental.  He also states that he did not know whether the gun fired during the accidental pull of the trigger.  That being the case, the inference is that if the gun did fire and strike Rueda, James Newman did not necessarily expect the harm that resulted from the first shot.  Consequently, it is possible that some of Rueda's injuries may be covered by the policies in question.

American Family attempts to avoid this result by pointing to the statement James Newman gave to the police following the shooting. (American Family Opp'n (#32) 6.)  There, James Newman did tell the police that his intent was to "shoot up the school" that day.  (Mot.

Summ. J. (#25) Ex. A p.16.) He also told the police that the first two shots were blank and that the gun did not fire the first time he pulled the trigger. Id. Ex. A, 23. Moreover, he did not claim that any of the shots fired accidentally. Id. That notwithstanding, while the statement given to the police contradicts the testimony given in his deposition, to resolve the discrepancy would require that the Court engage in a credibility determination, which is an issue for the jury. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (stating that "[i]n judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.") (citation omitted). Thus, there is at this point a possibility that some of Rueda's injuries were caused by an occurrence.[1]

**2. Intentional and Criminal Acts Exclusions**

Assuming that at least some of James Newman's actions might be construed as an occurrence under the policy, the policies exclude coverage for bodily injury caused by intentional acts of the insured. (Mot. Summ. J. (#25) Ex. C, D.) And according to American Family, James Newman's actions were intentional. Id. at 11-12.

As stated by the Nevada Supreme Court in Mallin v. Farmers Ins. Exchange, 108 Nev. 788, 839 P.2d 105 (Nev. 1992) (citing Rest. (2d) Torts § 8A), "'intent' or 'intention' denotes a design or desire to cause the consequences of one's acts and a belief that given consequences are substantially certain to result from the acts." Mallin, 108 Nev. at 791, 839 P.2d at 107 (holding that the perpetrator of a triple murder had the "design and desire to *kill* his wife and her friends and knew that shooting his victims in the head would result in their deaths.") (emphasis added). Therefore, "[a]s a general rule . . . one must look to the subjective intent of the insured, and if the insured did not intend to cause at least some injury,

---

[1] American Family cites Aldabe v. Adams, 81 Nev. 280, 402 P.2d 34 (1965), overruled on other grounds by Siragusa v. Brown, 114 Nev. 1384, 981 P.2d 801 (1998), for the proposition that a defendant may not create a question of fact by supplying contradictory testimony. However, this case is distinguishable from Aldabe. There, the court held that "a genuine issue of material fact may not be created by the conflicting sworn statements of the party against whom summary judgment was entered." Aldabe, 81 Nev. at 282, 402 P.2d at 35. Here, however, the conflict does not arise as between two sworn statements. The first statement was given to the police, without an attorney or guardian present, following the shooting. No oath or affirmation was given as to its veracity. The second was given during a deposition.

7

the exclusion is inapplicable." Sanders, 495 F. Supp. 2d at 1109.  That said, under Nevada law the intent to cause the ultimate harm may be inferred where the actor "knows with substantial certainty [that the act] will cause harm to a victim."  Rivera v. Nevada Med. Liability Ins., 107 Nev. 450, 454, 815 P.2d 71, 73 (Nev. 1991) (holding that the act of forcible rape is one "which the assailant knows with substantial certainty will cause harm to a victim of any age.").

Here again, it is not clear that both of the injuring shots were purposefully fired.  Thus, it is unclear whether James Newman intended the full scope of the injuries inflicted on Rueda. See Mallin, 108 Nev. at 791 (noting that "[i]n its simplest denotation, an intentional act is merely 'a willful muscular contraction," and that "[i]ntention involves the intersection of two ideas: bodily motion and operation of will.").  As was stated above, his deposition testimony was that the first pull of the trigger was accidental.  (Cross Mot. Summ. J. (#28) at Ex. 4, 29:1-13.)  He also stated that he did not know whether the gun fired at that time.  Id. at Ex. 4, 36:15-23.  Moreover, as to his general intent, when asked whether he brought the gun to school to shoot it he responded, "I don't know."  Id. at Ex. 4, 58:19-21.  Therefore, it could be that the harm inflicted on Rueda was not intended.  The police statement to the contrary, again, raises an issue of credibility for a jury, not adjudication on summary judgment.  Moreover, the Court cannot infer intent in this case.  Given Newman's claim that the gun may have fired accidentally, to do so the Court would have to hold that the aiming of a gun poses a substantial certainty that the person whom the gun is being aimed at will ultimately be injured. The Court holds that is not the case.

The criminal act exclusion is also inapplicable here.  The homeowners policy states, "We will not cover bodily injury or property damage arising out of . . . a violation of any criminal law for which any insured is convicted."  (Mot. Summ. J. (#25) Ex. C.)  The umbrella policy states, "We will not cover injury arising out of violation of penal law or ordinance by or with the

///

///

///

8

knowledge or consent of an insured when an insured is convicted of such violation." Id. at Ex. D.

In this case, it is undisputed that James Newman plead guilty to the criminal charge of battery with a deadly weapon, pursuant to NRS 200.491. (Cross Mot. Summ. J. (#28) 11.) However, it is also undisputed that James Newman was adjudicated as a juvenile, pursuant to NRS 62E.010. (American Mutual Reply in Support of Mot. Summ. J. (#30) 6.) That section states in pertinent part:

> 1. A child who is adjudicated pursuant to the provisions of this title is not a criminal and any adjudication is not a conviction, and a child may be charged with a crime or convicted in a criminal proceeding only as provided by this title.
>
> 2. Except as otherwise provided by specific statute, an adjudication pursuant to the provisions of this title upon the status of a child does not impose any of the civil disabilities ordinarily resulting from conviction, and the disposition of a child or any evidence given in the juvenile court must not be used to disqualify the child in any future application for or appointment to the civil service. NRS 62E.010.

Because section 62E.010 states that any adjudication "is not a conviction," this Court cannot conclude that the terms of the policy exclusion are met. Therefore, because there is a possibility of coverage as to the claims against James Newman, American Family must defend him in the underlying state court action.

**B. Negligence and Negligent Entrustment Claims Against Paul and Tami Newman**

American Family argues that the underlying claims against Paul and Tami Newman are not covered because they arise out of James Newman's intentional conduct. (Mot. Summ. J. (#25) 15-17); (American Family Opp'n to Cross Mot. Summ. J. (#32) 7.) The Newmans claim, however, that because some of James Newman's actions may constitute an occurrence the claim against them for negligent entrustment may be covered. (Cross Mot. Summ. J. (#28) 14.) They also claim that to the extent a negligence claim is asserted against them their negligence need only be a "but for" cause of the resulting harm in order for a possibility of coverage to exist. Id. 13-17. They contend that any negligent failure to secure a firearm here was such a cause. Id.

///

9

1    The underlying complaint alleges the following:

2    At all times mentioned, Defendants Paul B. Newman and Tami L. Newman, had a duty to prevent access and/or possession of the described firearm by Defendant James Newman, a minor, as well as to prevent access and/or possession of the ammunition for said firearm by Defendant James Newman, a minor. Defendants failed in this duty to prevent such access and/or possession of the described firearm and ammunition by Defendant James Newman, a minor, such as to render their own negligence as the proximate cause of the injuries and damages suffered by Plaintiffs herein. (Mot. Summ. J. (#25) at Ex. E ¶ 13.)

The Court agrees with the Newmans that the allegation can be construed as noticing both a general negligence claim, as well as a negligent entrustment claim. Under Nevada law, a negligent entrustment claim is barred where the underlying harm results from an intentional act of an insured. <u>Fire Ins. Exch. v. Cornell</u>, 120 Nev. 303, 306, 90 P.3d 978, 980 (2004) (holding where the parents of an adult child who committed statutory sexual seduction were sued for negligent supervision, the parents' "failure to prevent the sexual seductions is not an 'accident' as that term is commonly understood."). However, here there is a possibility that some of Rueda's injuries were not the result of intentional acts of James Newman. Therefore, American Family is bound to defend that claim.

As to the negligence claim, the issue is somewhat unclear. The Nevada supreme court has not explicitly stated whether a cause of action for negligence would fall outside the duty to defend where, as here, the intentional act exclusion precludes coverage for intentional acts "caused by" the insured. But even assuming that it would, whether the full scope of harm inflicted on Rueda was intentional is in question. Therefore, American Family must defend the negligence claim.

///
///
///
///
///
///
///

10

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that Plaintiff American Family's Motion for Summary Judgment (#25) is DENIED.

IT IS FURTHER ORDERED that Defendants James, Paul, and Tami Newman's Cross Motion for Summary Judgment (#28) and joined Defendants Kelly McKeon, Maria Del Socorro Perez, and Alex Rueda Joinder with Opposition and Cross-Motion for Summary Judgment Doc #29, be GRANTED. The Clerk of the Court shall therefore enter Judgment for Defendants James Newman, Paul Newman, Tami Newman, Kelly McKeon, Kenzie McKeon, Maria Del Socorro Perez, Francisco Perez and Alex Rueda, and against Plaintiff American Family Mutual Insurance Company. The Clerk of the Court shall close the case.

DATED: This 14th day of March, 2008.

_____
UNITED STATES DISTRICT JUDGE